Charese Rohny, OSB No. 953964
E-mail: crohny@mbjlaw.com
Andrew L. Toney-Noland, OSB No. 225718
E-mail: atoney-noland@mbjlaw.com
MCKANNA BISHOP JOFFE, LLP
1635 NW Johnson Street
Portland, Oregon 97209
Telephone: 503-226-6111

Gregory Kafoury, OSB No. 741663
kafoury@kafourymcdougal.com
Jason Kafoury, OSB No. 091200
jkafoury@kafourymcdougal.com
KAFOURY AND MCDOUGAL
411 SW Second Ave. Suite 200
Portland, Oregon 97204
Telephone: 503-224-2647

Of Attorneys for Plaintiff

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

### PORTLAND DIVISION

| | |
|---|---|
| **TROY JAMES WINSLOW; HAGOP ("JACK") KHARIKIAN,** | Civil Case No. _____ |
| Plaintiffs, | **COMPLAINT** |
| v. | (42 U.S.C. § 1983, 29 U.S.C. § 2615, ORS 659A.199, ORS 659A.203, ORS 659A.112, ORS 659A.183 *et al*., ORS 659.805, Intentional Infliction Of Emotional Distress, Negligent Infliction Of Emotional Distress, Negligent Hiring, Negligent Retention) |
| **OREGON HEALTH & SCIENCE UNIVERSITY; DAVID QUITMEYER, in his individual capacity; ADMIR BEGANOVIC, in his official and individual capacities; KRISTA KOLARIK, in her official and individual capacities; QIANA WILLIAMS, in her official and individual capacities,** | |
| | **DEMAND FOR JURY TRIAL** |
| Defendants. | |

**INTRODUCTION**

1.  Troy James Winslow and Hagop "Jack" Kharikian ("Plaintiffs") bring this action under 42 U.S.C. § 1983 for violations of their constitutional rights under the First and Fourteenth Amendments to the United States Constitution and their federal statutory rights under the Family and Medical Leave Act, together with supplementary Oregon statutory and common law claims. Plaintiffs seek damages, injunctive relief, and declaratory relief for injuries that resulted from a severe pattern of retaliation and discrimination against them after they engaged in protected activity.

2.  Plaintiffs both blew the whistle on unlawful activity, including sex discrimination, gender pay discrimination, mismanagement of funds, patient safety issues, threats of violence, intimidation, and that a member of management was creating rape/murder pornography and writing poems about stalking, torturing, and massacring nurses and patients on "Hospital Hill." Plaintiffs reported then OHSU Director of Respiratory Care, David Quitmeyer, including through both a public poster campaign and official complaints to management at Oregon Health & Science University, for, *inter alia*, Defendant Quitmeyer's misogyny, exacerbation of gender pay inequality, risky patient safety practices, improper hiring practices, and intimidation of employees who had engaged in legally protected union activity. Defendant Quitmeyer's key ally, Defendant Beganovic, and Quitmeyer's successor, Defendant Kolarik, waged a persistent campaign of retaliation and discrimination against both Plaintiffs by interfering with Plaintiffs' terms and conditions of employment, as well as their statutory entitlements to disability accommodations and protected leave. In retaliation for the protected activity, Defendant Quitmeyer sent harassing packages and communications to Plaintiff Winslow's home and to Plaintiff Winslow's colleagues, often attempting to impersonate Plaintiff Winslow. Plaintiffs continued to report

concerns about this campaign of retaliation to the highest levels of OHSU leadership, including Executive Vice President and Chief People Officer Qiana Williams, to no avail. Eventually, Defendants Beganovic, Kolarik, and Williams unlawfully terminated Plaintiffs' employment. On information and belief, Defendants also continue to interfere unlawfully with Plaintiff Winslow's future job prospects by telling other employers around the state not to hire him.

3. Defendants' relentless campaign of retaliation and discrimination has resulted in severe injury and damages to Plaintiffs, including but not limited to loss of employment, mental and emotional distress, financial precarity, pain and suffering, and drastically reduced job opportunities. They have been deprived of their property interests, liberty interests, subjected to harassment, intimidation thereby suffering loss of reputation in the community, humiliation, mental anguish, severe emotional distress, loss of economic and non-economic benefits of employment as a result of speaking out. Plaintiffs seek an award of damages from this Court, in an amount to be determined at trial, as well as injunctive relief to prevent Defendants' ongoing harm to Plaintiffs as a result of Plaintiffs' lawful exercise of their duty to report wrongdoing.

## PARTIES

4. Plaintiff Troy James Winslow is an individual who lives in Portland, Oregon, and is a former pediatric respiratory therapist at Oregon Health & Science University ("OHSU"), who was employed at OHSU during the relevant time periods in this complaint and worked at least 25 hours a week at OHSU.

5. Plaintiff Hagop "Jack" Kharikian is an individual who lives in Portland, Oregon, and is a former pediatric respiratory therapist at Oregon Health & Science University ("OHSU"), who was employed at OHSU during the relevant time periods in this complaint and worked at least 25 hours a week at OHSU.

6.     Defendant Oregon Health & Science University ("OHSU") is an independent public corporation as described in ORS 353.020. Defendant OHSU maintains a system of hospitals and clinics across the State of Oregon and is headquartered in Portland, Oregon. At all times relevant to this complaint, Defendant OHSU employed 50 or more employees in the State of Oregon.

7.     Defendant David Quitmeyer is an individual who is the former Director of Respiratory Care Services at OHSU.

8.     Defendant Admir Beganovic is an individual who works at OHSU's main campus in Portland, Oregon, and is currently the Interim Assistant Department Director, Respiratory Care and Special Diagnostics at OHSU.

9.     Defendant Krista Kolarik is an individual who works at OHSU's main campus in Portland, Oregon, and is currently the Interim Department Director, Respiratory Care and Special Diagnostics at OHSU.

10.     Defendant Qiana Williams is an individual who is the former Executive Vice President and Chief People Officer at OHSU.

**JURISDICTION AND VENUE**

11.     This Court has original jurisdiction over Plaintiffs' federal claims pursuant to 28 U.S.C. § 1331, and this Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

12.     Venue lies within the District of Oregon, as Plaintiffs reside in Portland, Oregon; Defendant OHSU has designated the address for its receipt of legal claims in Portland, Oregon; Defendant OHSU maintains offices in Oregon and does business in Oregon; at the time of the alleged violations, Defendant Quitmeyer and Defendant Williams worked at offices in Oregon

and did business in Oregon; Defendants Beganovic and Kolarik work at offices in Oregon and do

business in Oregon; nearly all of the events giving rise to this dispute and to Plaintiffs' claims

occurred in Oregon; and Defendants are subject to personal jurisdiction in Oregon and in this

District at the time this action was commenced. Venue is proper under 29 U.S.C. §185(a) and 28

U.S.C. §1391(b)(1) and (2) and (c).

13.     Divisional venue lies within Portland, Oregon, as a substantial part of the events

giving rise to Plaintiffs' claims occurred within the Portland Division, Plaintiffs reside in the

Portland Division, and most of the Defendants reside in or maintain offices in the Portland metro

area. Divisional venue is proper under LR 3-2.

### FACTS

### Plaintiff Winslow's Protected Activity and Defendants' Retaliation/Discrimination

14.     On or around February 10, 2020, Plaintiff Winslow began working in the

respiratory care department at OHSU in the role of Respiratory Therapist.

15.     In June 2022, OHSU granted Plaintiff Winslow an accommodation

regarding psychological trauma stemming from the birth of his twin children at OHSU and his

wife's massive near-fatal hemorrhaging during and after childbirth. As part of this

accommodation, OHSU agreed that Plaintiff Winslow would not be forced to work in either the

labor and delivery unit nor OHSU's neonatal ICU, the locations of the traumatizing events.

16.     On or around November 5, 2022, Plaintiff Winslow sent in a workplace report to

Defendant OHSU's Foundation Chairs, Jill Eiland and Greg Ness, describing Plaintiff

Winslow's concerns regarding lax patient safety, pay inequity, and misogynistic culture fostered

in the pediatric respiratory care department under Defendant Quitmeyer's leadership.  He did not

include his individual name or sign that report. In that same packet of information, Plaintiff

Winslow described Defendant Quitmeyer's active production of violent video pornography depicting murder and rape under the pseudonym "Allen Dusk." In this packet of information, Plaintiff Winslow quoted Dr. Danny Jacobs (then-president of OHSU), OHSU's code of excellence, and a report on OHSU's institutional culture published by Covington & Burling LLP on December 9, 2021.

17.     On or around December 21, 2022, together with union staff, Plaintiff Winslow posted flyers at OHSU's Doernbecher Children's Hospital highlighting concerns about Defendant Quitmeyer's lax approach to patient safety, exacerbation of gender pay inequity, misogynistic leadership style, and sexist statements to employees.

18.     On December 24, 2022, Defendant Quitmeyer sent a late-night email to the entire OHSU Respiratory Care department, describing "painting (his) brains on the wall with a shotgun" and mentioning that he would "be on campus a few days next week."

19.     On December 25, 2022, upon arriving at work to begin his shift, Plaintiff Winslow opened Defendant Quitmeyer's department-wide email message and immediately alerted OHSU administration and the OHSU public safety office. Plaintiff Winslow reported his fear that Defendant Quitmeyer would engage in violence on OHSU's campus against himself or others. On information and belief, OHSU took no action at that time.

20.     On December 27, 2022, just after Plaintiff Winslow arrived at OHSU, Defendant Quitmeyer entered the department. Plaintiff Winslow immediately approached Defendant Beganovic and asked, "Are you guys really alright with him being here after that email? Are you not concerned about peoples' safety?". Defendant Beganovic aggressively replied, "What email?". During mid-morning announcements to the department a short time later, Defendant Beganovic stated that OHSU leadership "stands behind Quitmeyer and supports him fully."

Winslow alerted OHSU campus police to his concerns over Defendant Quitmeyer's presence on campus, and campus police asked Defendant Quitmeyer to leave the premises.

21. Later in the day on December 27, 2022, while Defendant Quitmeyer was working from home and Plaintiff Winslow was still on shift working at OHSU with patients, Defendant Quitmeyer electronically messaged several of his colleagues about a "weird email" he had just received. The email contained threatening language and attempted to impersonate Plaintiff Winslow by using an email address with Plaintiff Winslow's Instagram username spelled backwards.

22. On December 30, 2022, Plaintiff Winslow contacted OHSU campus police chief Heath Kula, expressing concerns about identify theft due to the threatening email Defendant Quitmeyer highlighted. Plaintiff also communicated safety concerns for his family. That same day, OHSU Vice President Brad Reed sent an email to the entire department characterizing the flyer distribution regarding Defendant Quitmeyer as being done by a single person.

23. On or around January 3, 2023, a fax was sent to the entire OHSU leadership team, showing an image of Defendant Quitmeyer with large bold X marks over both of his eyes and crosshairs on his forehead, and stating, "1 asshole down, more 2 go." Like the December 27, 2022, email, the fax also attempted to impersonate Plaintiff Winslow.

24. On or around January 5, 2023, Plaintiff Winslow learned that Defendant Quitmeyer had been placed on paid administrative leave by OHSU.

25. On January 6, 2023, Plaintiff Winslow filed for a restraining order against Defendant Quitmeyer. That evening, Plaintiff Winslow received via mail a letter with no return address postmarked from Florida. The letter constituted a "glitter bomb," filled with copious amounts of glitter, as well as a drawing of a raised middle finger on a sheet of paper. The

following day, on January 7, 2023, fearing that Defendant Quitmeyer knew his residential address, Plaintiff Winslow, his wife, and his two-year-old twins packed their bags and left their home for a safer place. On January 7, 2023, Rachel Coleman, a colleague of Plaintiff Winslow's and another critic of Defendant Quitmeyer's sexist policies, received a similar "glitter bomb" letter, this one with the message, "Karma is a bitch and so are you."

26.     On or around January 9, 2023, Plaintiff Winslow sent a formal complaint to OHSU's executive leadership team and Board of Directors, outlining his original complaints regarding Defendant Quitmeyer and the harassment that had followed. In his formal complaint, Plaintiff Winslow included a poem written by Defendant Quitmeyer under his pseudonym "Allen Dusk," which is entitled "Hospital Hill" and describes a doctor and "[t]he patients he had all tortured, the nurses he had all killed, all in the name of medicine, while perfecting his skills," and also mentions that "[g]allons of innocent blood were spilled and swept away through an old, rusty drain." The poem also describes graphic scenes of torture conducted by a doctor on "old Hospital Hill." OHSU General Counsel April Cuprill Comas confirmed receipt of the complaint on January 12, 2023.

27.     On or around January 19, 2023, Plaintiff Kharikian and fourteen of his colleagues sent a letter to OHSU leadership regarding the mismanagement of their department and the fostering of a toxic work environment under Defendant Quitmeyer's leadership.

28.     On February 1, 2023, Plaintiff Winslow filed his second formal complaint to OHSU leadership regarding the hostile work environment he and his colleagues were experiencing. On information and belief, OHSU did not respond.

29.     On February 9, 2023, Jill Stowell, a colleague of Plaintiffs' and a fellow signatory to the January 19th letter regarding Defendant Quitmeyer, received a mail package at her desk at

work at OHSU. Inside the package was a chocolate dildo with the message "EAT A DICK" written on the inside of the box.

30.    On February 10, 2023, Plaintiff Winslow sent a third formal complaint to OHSU leadership, this time describing the chocolate dildo his female co-worker received. On information and belief, OHSU did not respond.

31.    On February 11, 2023, an Amazon package addressed to Plaintiff Winslow's wife was delivered to Plaintiff Winslow's home. The package contained a book about how to discover if your spouse is cheating, along with a note reading, "Sorry to have to tell you this way… Jyllyan."

32.    On February 12, 2023, Plaintiff Winslow arrived home to discover a Valentine's Day-themed balloon tied onto the front gate in front of his home. Plaintiff Winslow files a fourth formal complaint with OHSU leadership. The OHSU Board of Directors responded that Plaintiff Winslow should direct his complaints to OHSU's public safety office, human resources department, and Office of Civil Rights Investigation and Compliance ("OCIC") going forward.

33.    Throughout February and March 2023, the stress and fear of Defendant Quitmeyer's ongoing harassment caused Plaintiff Winslow's physical and mental health to severely decline. Plaintiff Winslow was diagnosed with post-traumatic stress disorder, major depressive disorder, and unspecified anxiety disorder, all largely connected to the retaliation and harassment against him for speaking out against Defendant Quitmeyer. Plaintiff Winslow took protected leave under the Family & Medical Leave Act to recover.

34.    On April 26, 2023, OCIC informs Plaintiff Winslow that OHSU will not investigate his complaints regarding Defendant Quitmeyer unless Defendant Quitmeyer returns to in-person work at OHSU.

35.     Throughout April and May 2023, Defendant Beganovic repeatedly utilized non-credible complaints against Plaintiff Winslow to discipline him without any thorough investigation. Plaintiff Winslow filed multiple retaliation complaints against Defendant Beganovic with OHSU.

36.     On June 12, 2023, Defendant Beganovic handed Plaintiff Winslow an Amazon delivery package during the department's morning huddle at OHSU. The package label read: "Troy Winslow – Rose Award Enclosed." Rose awards are given to those at OHSU who have exemplified service above and beyond the set standards. Plaintiff Winslow had been nominated for the award several times previously. When Plaintiff Winslow opened the package, however, he pulled out a plaque that read, "This plaque certifies you as the world's biggest asshole," among other offensive inscriptions. The entire department witnessed this moment.

37.     On July 27, 2023, Defendant Beganovic informed Plaintiff Winslow that Beganovic would be taking over as his direct manager. Plaintiff Winslow asked via email that an interim manager be assigned until Plaintiff Winslow's retaliation complaints against Defendant Beganovic were resolved.

38.     From August 10, 2023, through August 15, 2023, Defendant Beganovic repeatedly emailed Plaintiff Winslow, stating "you will begin reporting to me," and ordering him to attend one-on-one meetings. Defendant Beganovic repeatedly failed to tell Plaintiff Winslow where the meetings would be held and failed to indicate whether coverage would be provided for Plaintiff Winslow's high-acuity patients during those meetings.

39.     On August 15, 2023, Plaintiff Winslow unintentionally missed a scheduled one-on-one meeting with Defendant Beganovic, because Plaintiff Winslow was providing care to a pediatric patient who was in the process of dying due to traumatic respiratory hemorrhaging.

That afternoon, Defendant Beganovic and Defendant Kolarik placed Plaintiff Winslow on paid administrative leave and had campus police escort Plaintiff Winslow from the premises without providing any coverage for Plaintiff Winslow's high-acuity patients. After Plaintiff Winslow left campus, Defendant Beganovic sent him a paid administrative leave letter citing unspecified "code of conduct concerns" as the reason for the police escort and administrative leave.

40.     The next morning, August 16, 2023, Plaintiff Kharikian asked loudly during a morning huddle among the team members in the department, "Does OHSU policy include removing an able bodied, ICU-trained respiratory therapist in the middle of their shift via police escort? While also not notifying anyone else who was also in the PICU about the removal or allowing him to give report on his patients?" Defendant Kolarik scoffed and told the charge to continue with the morning huddle.

41.     On August 17, 2023, Plaintiff Winslow filed an email complaint with OCIC regarding Defendant Beganovic's retaliatory use of a police escort and paid administrative leave. During an investigatory meeting pursuant to this complaint in late September 2023, Defendant Beganovic then falsely accused Plaintiff Winslow of assaulting him in the pediatric ICU. Multiple nurses submitted statements showing Defendant Beganovic's claims to be false.

42.     On August 24, 2023, Winslow learned from a colleague that Defendant Kolarik had received an Amazon package at work that included a horror film entitled, "You're Next." Winslow believed the package was sent by someone again intending to impersonate him.

43.     On or around September 27, 2023, during an investigatory meeting, Defendant Beganovic falsely accused Plaintiff Winslow of assault and battery during the removal of Plaintiff Winslow from the department by campus police on August 15, 2023. Three witnesses

submitted statements flatly refuting Defendant Beganovic's false claims. OHSU later confirmed in January 2024 that Defendant Beganovic's claims of assault and battery were unsubstantiated.

44.     On or around October 24, 2023, Defendant Beganovic informed Plaintiff Winslow that he could return to work with a final written warning added to his file. As one of the conditions in the final written warning, Defendants Beganovic and Kolarik stated that Plaintiff Winslow would have a year-long standing mental health accommodation revoked and would be forced to work in the neonatal ICU, a place that triggered Plaintiff Winslow's PTSD due to traumatic experiences during the birth of his twin children. Plaintiff Winslow was forced to enter several months of negotiations with OHSU's accommodation office and publicly explain his trauma to his colleagues over email in order to retain his accommodation.

45.     After failing to effectively revoke Plaintiff Winslow's accommodation, in early February 2024, Defendant Kolarik assigned Plaintiff Winslow to an adult nightshift position, a position with an extremely difficult schedule for a worker with two young children at home. Plaintiff Winslow requested an alternative schedule and took protected leave to care for his mental health and stress due to the retaliation he was facing.

46.     On February 27, 2024, Defendant Kolarik placed Plaintiff Winslow on paid administrative leave without providing any reason.

47.     On March 8, 2024, Defendant Kolarik placed Plaintiff Winslow on unpaid leave pending termination without providing any reason.

48.     On March 15, 2024, at his pre-dismissal hearing, Plaintiff Winslow wore tape over his mouth in protest while his union representative detailed the retaliatory campaign waged by Defendants OHSU, Beganovic, and Kolarik. Less than two hours later, Defendant Kolarik officially terminated Plaintiff Winslow's employment. On March 18, 2024, Defendant Kolarik

emailed the entire department, stating, "I am writing to inform you that Troy Winslow is no longer with OHSU. We wish Troy the best in his future endeavors. Please direct any questions to myself or Admir."

49.     From July 2023 through his termination, Plaintiff Winslow repeatedly contacted Defendant Williams about Defendant Beganovic's and Defendant Kolarik's campaign of retaliation and harassment against him. Defendant Williams never took meaningful action to address Plaintiff Winslow's concerns.

50.     On information and belief, Defendant Williams approved the termination of Plaintiff Winslow's employment.

51.     On information and belief, the packages and communications referenced above in paragraphs 21, 23, 25, 29, 31, 32, 36, and 42 were sent by Defendant Quitmeyer and/or his agents for the purpose of retaliating against and intimidating Plaintiff Winslow and other OHSU employees who criticized Defendant Quitmeyer, like Plaintiff Kharikian.

52.     On information and belief, Defendant Quitmeyer and his wife, Mallisa Quitmeyer, a manager in respiratory care at Randall Children's Hospital, maintained a "Do Not Hire" list, which they circulated to area hospitals. On information and belief, this list included the names of individuals who had been critical of Defendant Quitmeyer, including all of the pediatric therapists who signed the January 19th letter critical of Defendant Quitmeyer. On information and belief, Defendant Quitmeyer's wife, Mallisa Quitmeyer, provided the "Do Not Hire" list to the Director of Respiratory Care at Randall Children's Hospital, Deb Regan.

53.     On information and belief, Defendants have repeatedly interfered with Plaintiff Winslow's future employment prospects. Specifically, one Oregon hospital canceled Plaintiff

Winslow's job interview without explanation, and Plaintiff Winslow has not been offered job positions at other hospitals after the interviewers mentioned that they had spoken to Defendant Beganovic.

**Plaintiff Kharikian's Protected Activity and Defendants' Retaliation/Discrimination**

54. On or around November 5, 2018, Plaintiff Kharikian began working for OHSU as a respiratory therapist.

55. On February 7, 2023, Plaintiff Kharikian filed an internal OHSU retaliation complaint regarding Defendant Quitmeyer's use of an irregular hiring process to fill a vacancy in the pediatric respiratory department, through which Defendant Quitmeyer installed Aubree Augst in a managerial role without following department hiring policies and procedures. During the course of the investigation over the next several months, Plaintiff Kharikian repeatedly had to correct inaccuracies in OHSU's investigatory meeting notes, and he asked for future investigatory meetings to be recorded to preserve the accuracy of his statements.

56. In April 2023, Plaintiff Kharikian also learned from Plaintiff Winslow that Plaintiff Kharikian had been named as a likely defendant in a tort claims notice filed by Defendant Quitmeyer. From April through June 2023, Plaintiff Kharikian took continuous protected medical leave from work due to serious mental health issues stemming from Defendant Quitmeyer's legal threats against Plaintiff Kharikian, OHSU's failure to protect Plaintiff Kharikian, and OCIC's inadequate investigation process.

57. On June 12, 2023, Plaintiff Kharikian was approved to take intermittent leave from work in the amount of up to two days biweekly for the foreseeable future.

58. On August 15, 2023, Defendants Beganovic and Kolarik asked campus police to remove Kharikian's colleague, Troy Winslow, from the pediatric ICU while he was caring for

high acuity patients. Because OHSU failed to put a plan into place to take care of Winslow's patients, Kharikian rushed to find out who Winslow's patients were and arranged respiratory care for them. The next day, during a morning team huddle, Mr. Kharikian openly questioned whether it was safe for OHSU to remove a respiratory therapist via police escort from the ICU without providing a plan for handing off his patients. Defendants Beganovic and Kolarik asked Plaintiff Kharikian to stay after the meeting but refused Plaintiff Kharikian's request for a union representative and scoffed at his request for an accommodation of being able to record the meeting due to his learning disability. Plaintiff Kharikian informed Defendants Beganovic and Kolarik that he would not attend the meeting without his union representative or without an accommodation of recording the meeting.

59.    On or around August 18, 2023, at a department Q&A meeting, Plaintiff Kharikian raised several concerns regarding the department's mismanagement of finances, the safety implications of the department's forced removal of a colleague in the middle of patient treatments, opposing how management handled another whistleblower in a manner that he reported was harmful and involved patient negligence, unsafe and inadequate levels of staffing, being misled by management, lack of transparency, lack of accountability and OHSU failing to take meaningful remedial actions involving the same.

60.    On or around September 6, 2023, OHSU manager Aubree Augst, Defendant Beganovic, and Defendant Kolarik attempted to terminate Plaintiff Kharikian's employment while he was on intermittent protected medical leave. On October 10, 2023, OHSU manager Aubree Augst issued two disciplinary warnings to Plaintiff Kharikian, one alleging unscheduled, unprotected absence[s]," and the other alleging unprofessionalism due to Plaintiff Kharikian's critical comments in department meetings.

61.     A week later, Defendant Beganovic cornered Plaintiff Kharikian in the emergency department while Plaintiff Kharikian was working with a patient. Defendant Beganovic verbally bullied Plaintiff Kharikian in front of patients and OHSU employees.

62.     On October 26, 2023, Plaintiff Kharikian filed complaints of targeted harassment with OHSU HR and OCIC. In December 2023, OHSU's HR closed its investigation into Plaintiff Kharikian's complaint after speaking only with Aubree Augst, Defendant Kolarik, and Defendant Beganovic—the three respiratory department supervisors named as respondents in the complaint.

63.     On December 22, 2023, Plaintiff Kharikian sent a letter to numerous members of OHSU's senior leadership, including the head of the executive board, HR, various ICU doctors, and OCIC, in which he explained that he had been retaliated against in multiple ways by Defendant Kolarik, who was now under consideration for the vacant position of Respiratory Director.

64.     From February 16, 2024, through April 30, 2024, Plaintiff Kharikian took continuous protected medical leave from work, again due to serious mental health issues stemming from Defendant OHSU's continuous pattern of harassment and retaliation against him.

65.     On or around May 3, 2024, Defendant OHSU placed Plaintiff Kharikian on paid administrative leave pending a disciplinary investigation.

66.     On or around May 29, 2024, Defendant Kolarik provided Plaintiff Kharikian with a pre-dismissal notice and placed him on unpaid leave pending the outcome of a pre-dismissal meeting.

67.     On June 12, 2024, Defendant Kolarik officially terminated Plaintiff Kharikian's employment, listing only "just cause" as the grounds for termination and including a single

"finding of fact": "You have failed to meet performance and conduct expectations of your position." During the union grievance process following Plaintiff Kharikian's termination, OHSU has repeatedly asserted shifting justifications for Plaintiff Kharikian's termination.

## Compliance with Oregon Tort Claims Act

68.     On June 7, 2023, Plaintiff Winslow served Defendant OHSU with a formal notice of claims pursuant to ORS 30.275(4).

69.     On April 23, 2024, Plaintiff Winslow served Defendant OHSU with an updated formal notice of claims pursuant to ORS 30.275(4).

70.     On September 19, 2024, Plaintiff Kharikian served Defendant OHSU with a formal notice of claims pursuant to ORS 30.725(4).

71.     Plaintiffs have fully complied with the notice provisions of ORS 30.275.


## FIRST CLAIM FOR RELIEF

### 42 U.S.C. § 1983 – 1st Amendment - Free Speech Retaliation
**(Both Plaintiffs Against Defendant Quitmeyer, in his individual capacity, and Defendants Beganovic, Kolarik, and Williams, in their official and individual capacities)**

72.     Plaintiffs incorporate by reference the allegations of paragraphs 1 through 71.

73.     As public employees, Plaintiffs had a right to free speech.

74.     As private citizens, Plaintiffs had a right to free speech.

75.     Plaintiffs spoke as citizens on matters of public concern, including subjects critical to public health and safety, as well as the public entity's policies, management, and administrators.

76.     Plaintiffs spoke out as private citizens through flyers and oral and written complaints on controversial subjects that implicated matters of public concern and public safety, including but not limited to the following:

a. Misuse of power, misuse of resources and misuse of authority by management employees of at OHSU;

b. Negligence, misfeasance and/or malfeasance by Defendants including but not limited to the mismanagement of finances, the safety implications of the department's forced removal of a colleague in the middle of patient treatments, management's inadequate handling of other whistleblower complaints, unsafe and inadequate levels of staffing, being misled by management, lack of transparency, lack of accountability and OHSU failing to take meaningful remedial actions involving the same.

c. Negligence, misfeasance and/or malfeasance by Defendants during investigations and their inadequacies involving, among other things, Defendant Quitmeyer's harassing communications and packages, Defendant Quitmeyer's irregular hiring practices, and Defendant Beganovic's and Defendant Kolarik's pattern of retaliation against both Plaintiffs.

d. Unlawful gender discrimination and disparate pay of employees by Defendants based upon gender;

e. An unlawful misogynistic, toxic culture and the negative impact it had on women and people of color, involving the negative impact on both employees and patients alike; and

f. Defendants' negligence and or misfeasance involving a substantial and specific danger to public health and safety.

77. Plaintiffs' actions of posting flyers and making complaints regarding the subjects of public concern listed above were not aspects of Plaintiffs' ordinary job duties assigned by their public employer.

78. Acting under color of state law, and in the course and scope of their employment, Defendants violated Plaintiffs' right to free speech under the First Amendment when they retaliated against Plaintiffs for speaking out on matters of public concern. Defendants' harassment and retaliation constituted a continuous pattern of on-going conduct by Defendants in response to Plaintiffs' protected speech as described above, including but not limited to the following:

   a. The Defendants adversely altered the terms and conditions of Plaintiffs' employment from December 2022 until their terminations—March 15, 2024 for Plaintiff Winslow, and June 12, 2024 for Plaintiff Kharikian.

   b. The Defendants subjected Plaintiffs to a hostile and retaliatory work environment, unbearable working conditions, repetitive unjustified discipline, and a reassignment for Winslow that violated a longstanding disability accommodation;

   c. The Defendants harassed and retaliated against Plaintiffs by sending harassing packages and communications to Plaintiff Winslow, impersonating Plaintiff Winslow, falsely accusing Plaintiff Winslow of assault and battery, verbally bullying both Plaintiffs, and repeatedly seeking to take unjustified and severe disciplinary action against both Plaintiffs.

   d. The Defendants, or its agents, made derogatory, harmful and/or defamatory statements about Plaintiff Winslow to prospective employers, preventing

Plaintiff Winslow from securing gainful employment and causing a job

interview to be rescinded.

79.     Plaintiffs' protected speech was a substantial and motivating factor for the above-described retaliatory actions and decisions made by Defendants.

80.     As a direct and proximate result of Defendants' previously described wrongful conduct and violations of Plaintiffs' constitutionally guaranteed rights, Plaintiffs have suffered economic damages, loss of certain employment benefits, decreased retirement benefits, the loss of subsequent employment opportunities and are entitled to recover their lost wages, past and future, lost medical benefits, medical expenses due to the severe impact on their mental, emotional and physical state, and other expenses incurred in connection their respective injuries caused by the actions alleged herein in an amount to be determined at the time of trial.

81.     As a further result of Defendants' violations of Plaintiffs' constitutionally-guaranteed rights alleged herein, Plaintiffs suffered and continue to suffer severe emotional distress, mental pain and anguish, depression, malaise, damages for impaired reputation and humiliation and other non-economic compensatory damages sufficient to compensate them for emotional pain and suffering and other non-economic losses in an amount found appropriate by a jury.

82.     Defendants' conduct in their individual capacity was intentional, deliberately indifferent and/or with reckless disregard for plaintiffs' federally protected rights.  Such conduct exceeds the bounds of social toleration and is of a sort that would be deterred by an award of punitive damages.  Plaintiffs are entitled to recover from Defendants Quitmeyer, Beganovic, Kolarik, and Williams punitive damages in an amount found appropriate by a jury to punish Defendants and to deter similar conduct by these Defendants and others in the future.

83.     Plaintiffs were required to hire attorneys to prosecute this action and are entitled to an award of reasonable attorneys' fees, expert fees and costs incurred herein, pursuant to 42 U.S.C. § 1988.

84.     As a result of the unlawful actions alleged herein against Defendants Beganovic, Kolarik, and Williams in their official capacities, Plaintiffs are entitled to injunctive relief against Defendant OHSU, including but not limited to an expungement of all possible references to code of conduct violations and insubordination in their personnel files.

## SECOND CLAIM FOR RELIEF

**42 U.S.C. § 1983 – Violation of the Due Process Clause – Property Interest**
**(Both Plaintiffs Against Defendant Quitmeyer, in his individual capacity, and Defendants Beganovic, Kolarik, and Williams in their official and individual capacities)**

85.     Plaintiffs reallege and incorporates as though set forth here in paragraphs 1 through 84.

86.     Plaintiffs have a property interest in their public employment and an associated right to due process of the law, as guaranteed by the Fourteenth Amendment to the Constitution, in their positions as respiratory therapists at OHSU.

87.     Plaintiffs suffered deprivation of their property interests without due process under color of state law because Defendants acted in their capacity as state officials and employees of the state, and took adverse employment actions against Plaintiffs under the imprimatur of the state.

88.     As a result of Defendants' violations of Plaintiffs' constitutionally protected rights, plaintiffs have suffered economic damages in an amount to be determined due to the terminations.

89.     As a further result of Defendants' violations of Plaintiffs' constitutionally guaranteed rights, Plaintiffs have suffered emotional and physical distress, damages for impaired reputation and humiliation, and other non-economic damages for which Plaintiffs are entitled to recover compensatory damages from Defendants in an amount to be determined by trial.

90.      Plaintiffs were required to hire attorneys to prosecute this action and are entitled to an award of reasonable attorneys' fees, expert fees and costs incurred herein, pursuant to 42 U.S.C. § 1988.

91.     As a result of the unlawful actions alleged herein against Defendants Beganovic, Kolarik, and Williams in their official capacities, Plaintiffs are entitled to injunctive relief against Defendant OHSU, including but not limited to an expungement of all possible references to code of conduct violations and insubordination in their personnel files.

### THIRD CLAIM FOR RELIEF

**Both Plaintiffs Against Defendant OHSU**
**(Whistleblower Retaliation in Violation of ORS 659A.199)**

92.     Plaintiffs reallege and incorporate as though set forth herein paragraphs 1 through 91.

93.     Defendants retaliated and discriminated against Plaintiffs in their terms, conditions and/or privileges of employment due to Plaintiffs' good faith reporting to the public, their superiors, management, and Defendant OHSU's leadership information that Plaintiffs believed constituted evidence of violations of state and/or federal laws, rules, and regulations.

94.     Plaintiffs' disclosures and reports speaking out on such matters were protected activities.

95.     The actions of Defendant OHSU, its agents and employees acting within the course and scope of their duties as set forth above and incorporated into this paragraph, violated plaintiffs' rights under ORS 659A.199.

96.     Plaintiffs' protected activity was a substantial and motivating factor for the above-described retaliatory actions and decisions made by Defendant OHSU, its agents and all defendants.

97.     Defendant OHSU is liable to the full extent allowable by law for the retaliatory conduct of its agents and employees against Plaintiffs for their protected whistleblower activity.

98.     As a result of Defendants' violations of Plaintiffs' statutorily protected rights, Plaintiffs have suffered economic damages in an amount to be determined by trial.

99.     As a further result of Defendants' violations of Plaintiffs' statutorily guaranteed rights, Plaintiffs have suffered emotional and physical distress, damages for impaired reputation and humiliation, and other non-economic damages for which Plaintiffs are entitled to recover compensatory damages from Defendants in an amount to be determined by trial.

100.    Plaintiffs were required to hire attorneys to prosecute this action and are entitled to an award of reasonable attorneys' fees, expert fees and costs incurred herein, pursuant to ORS 659A.885.

## FOURTH CLAIM FOR RELIEF

**Both Plaintiffs Against Defendant OHSU**
**(Public Employee Whistleblower Retaliation in Violation of ORS 659A.203)**

101.    Plaintiffs incorporate by reference paragraphs 1 through 100 as though set forth herein.

102.    At all material times Plaintiffs were employees as defined by ORS 659A.200.

103.     Plaintiffs reasonably believed in good faith that their disclosures constituted evidence of a violation of law, mismanagement, gross waste of funds, abuse of authority, and/or a substantial and specific danger to the public.

104.     Plaintiffs were retaliated against for their speech and for reporting their opposition to violations of law, rules, and regulations as described in paragraphs 16, 17, 19, 20, 22, 25, 26, 27, 28, 30, 32, 35, 37, 40, 41, 42, 44, 45, 49, 55, 58, 59, 62, and 63, which are incorporated herein and in the facts as alleged by Plaintiffs above.

105.     Plaintiffs were terminated due to reporting unlawful conduct and/or conduct that Plaintiffs believed in constituted a violation of law, mismanagement, gross waste of funds, abuse of authority, and/or a substantial and specific danger to the public.

106.     The actions of Defendant OHSU and its agents and employees acting within the course and scope of their duties as set forth above and incorporated into this paragraph violated the Plaintiffs' rights under ORS 659A.203.

107.      Defendant OHSU is liable to the full extent allowable by law for the retaliatory conduct of its agents and employees against Plaintiffs for their protected whistleblower activity.

108.     As a result of Defendants' violations of Plaintiffs' statutorily protected rights, Plaintiffs have suffered economic damages in an amount to be determined by trial.

109.     As a further result of Defendants' violations of Plaintiffs' statutorily guaranteed rights, Plaintiffs have suffered emotional and physical distress, damages for impaired reputation and humiliation, and other non-economic damages for which Plaintiffs are entitled to recover compensatory damages from Defendants in an amount to be determined by trial.

110.   Plaintiffs were required to hire attorneys to prosecute this action and are entitled to an award of reasonable attorneys' fees, expert fees and costs incurred herein, pursuant to ORS 659A.885.

## FIFTH CLAIM FOR RELIEF

**Both Plaintiffs Against Defendant OHSU**
**(Violation of ORS 659A.112 - Disability Discrimination and Retaliation)**

111.   Plaintiffs incorporate by reference paragraphs 1 through 110 as though set forth herein.

112.   Plaintiff Winslow is a qualifying person with a disability under ORS 659A.104 because he has a mental impairment that substantially limits one or more major life activities, has a record of having such an impairment, and has been regarded as having such an impairment.

113.   Plaintiff Kharikian is a qualifying person with a disability under ORS 659A.104 because he has a mental impairment that substantially limits one or more major life activities, has a record of having such an impairment, and has been regarded as having such an impairment.

114.   Defendant OHSU is a covered employer under ORS 659A.106, because it employs six or more persons.

115.   By unilaterally revoking Plaintiff Winslow's longstanding mental disability accommodation and terminating Plaintiff Winslow's employment shortly thereafter, Defendant OHSU committed unlawful employment discrimination on the basis of disability in violation of ORS 659A.112.

116.   By laughing at Plaintiff Kharikian's request for accommodation and failing to participate in an interactive process regarding Plaintiff Kharikian's requests for accommodation, Defendant OHSU committed unlawful employment discrimination on the basis of disability in violation of ORS 659A.112.

117.    Defendant OHSU discriminated against both Plaintiffs in their terms, conditions, and privileges of employment on the basis of disability, in violation of ORS 659A.112.

118.    As a result of Defendants' violations of Plaintiffs' statutorily protected rights, Plaintiffs have suffered economic damages in an amount to be determined by trial.

119.    As a further result of Defendants' violations of Plaintiffs' statutorily guaranteed rights, Plaintiffs have suffered emotional and physical distress, damages for impaired reputation and humiliation, and other non-economic damages for which Plaintiffs are entitled to recover compensatory damages from Defendants in an amount to be determined by trial.

120.    Plaintiffs were required to hire attorneys to prosecute this action and are entitled to an award of reasonable attorneys' fees, expert fees and costs incurred herein, pursuant to ORS 659A.885.

## SIXTH CLAIM FOR RELIEF

**Both Plaintiffs Against Defendants OHSU, Beganovic, Kolarik, and Williams**
**(Family Leave Discrimination and Retaliation in Violation of ORS 659A.183)**

121.    Plaintiffs incorporate by reference paragraphs 1 through 120 as though set forth herein.

122.    Defendant OHSU is a covered employer within the meaning of ORS 659A.153, because Defendant OHSU employs 25 or more persons in the State of Oregon.

123.    Both Plaintiffs are eligible employees within the meaning of ORS 659A.156, because they both were employed by Defendant OHSU for 180 days or more immediately before the dates that leave would commence, and they worked an average of more than 25 hours per week during that time.

124.    By attempting to take and taking disciplinary action against Plaintiff Winslow while he was on protected leave, Defendants unlawfully retaliated and discriminated against

Plaintiff Winslow for exercising his rights to inquire about, request, and utilize family and medical leave in violation of ORS 659A.183.

125. By attempting to take and taking disciplinary action against Plaintiff Kharikian while he was on protected leave, Defendants unlawfully retaliated and discriminated against Plaintiff Kharikian for exercising his rights to inquire about, request, and utilize family and medical leave in violation of ORS 659A.183.

126. As a result of Defendants' violations of Plaintiffs' statutorily protected rights, Plaintiffs have suffered economic damages in an amount to be determined by trial.

127. As a further result of Defendants' violations of Plaintiffs' statutorily guaranteed rights, Plaintiffs have suffered emotional and physical distress, damages for impaired reputation and humiliation, and other non-economic damages for which Plaintiffs are entitled to recover compensatory damages from Defendants in an amount to be determined by trial.

128. Plaintiffs were required to hire attorneys to prosecute this action and are entitled to an award of reasonable attorneys' fees, expert fees and costs incurred herein, pursuant to ORS 659A.885.

## SEVENTH CLAIM FOR RELIEF

**Both Plaintiffs Against Defendants OHSU, Beganovic, Kolarik, and Williams**
**(Family and Medical Leave Act Interference and Retaliation**
**in Violation of 29 U.S.C. § 2615)**

129. Plaintiffs incorporate by reference paragraphs 1 through 128 as though set forth herein.

130. At all relevant times, both Plaintiffs were eligible employees under the Family and Medical Leave Act ("FMLA").

131.     At all relevant times, Defendant OHSU was a covered employer under the FMLA, because Defendant had 50 or more employees during the current and/or preceding calendar year.

132.     Defendants violated the FMLA by unlawfully interfering with, restraining, and/or denying the exercises of Plaintiff Winslow's FMLA rights by, *inter alia*, attempting to take and taking disciplinary action against Plaintiff Winslow while he was on protected leave.

133.     Defendants violated the FMLA by unlawfully interfering with, restraining, and/or denying the exercises of Plaintiff Kharikian's FMLA rights by, *inter alia*, attempting to take and taking disciplinary action against Plaintiff Kharikian while he was on protected leave.

134.     Defendants also violated the FMLA by terminating both Plaintiffs in retaliation for their use of FMLA—which, for both Plaintiffs, was leave used to care for mental and physical conditions caused by Defendants' pattern of unrelenting retaliation and harassment.

135.     As a result of Defendants' violations of Plaintiffs' statutorily protected rights, Plaintiffs have suffered economic damages in an amount to be determined by trial.

136.     Defendants' unlawful actions constitute bad faith, malicious, willful, and wanton violations of the FMLA for which Plaintiffs are entitled to an award of liquidated damages under 29 U.S.C. § 2617.

137.     Plaintiffs were required to hire attorneys to prosecute this action and are entitled to an award of reasonable attorneys' fees, expert fees and costs incurred herein, pursuant to 29 U.S.C. § 2617.

### EIGHTH CLAIM FOR RELIEF

**Plaintiff Winslow Against All Defendants**
**(Blacklisting in Violation of ORS 659.805)**

138.     Plaintiffs incorporate by reference paragraphs 1 through 137 as though set forth herein.

139.    Defendants have published or caused to be published Plaintiff Winslow's name with intent and for the purpose of preventing Plaintiff Winslow from engaging in or securing similar or other employment from any other corporation, company or individual.

140.    Defendants have also conspired and/or contrived by correspondence or otherwise to prevent Plaintiff Winslow, after his termination, from securing future employment.

141.    As a result of Defendants' violations of Plaintiff's statutorily protected rights, Plaintiff has suffered economic damages due to lost employment opportunities, in an amount to be determined by trial.

142.    As a further result of Defendants' violations of Plaintiff Winslow's statutorily guaranteed rights, Plaintiff has suffered emotional and physical distress, damages for impaired reputation and humiliation, and other non-economic damages for which Plaintiff is entitled to recover compensatory damages from Defendants in an amount to be determined by trial.

143.    Plaintiff Winslow was required to hire attorneys to prosecute this action and is entitled to an award of reasonable attorneys' fees, expert fees and costs incurred herein.

## NINTH CLAIM FOR RELIEF

### Both Plaintiffs Against All Defendants
### (Intentional Infliction of Emotional Distress in Violation of
### Common Law)

144.    Plaintiffs incorporate by reference paragraphs 1 through 143 as though set forth herein.

145.    Defendants, by virtue of their supervisory capacity over Plaintiffs, had a special relationship as a result of Plaintiffs' employment with OHSU.

146.    The special relationship required Defendants to act with due care and to ensure that Plaintiffs would not experience emotional distress as a result of Defendants' intentional actions.

147.    Defendants Quitmeyer, Beganovic, Kolarik, and Williams were acting in the course and scope of their employment during many of the alleged acts that intentionally inflicted emotional distress on Plaintiffs.

148.    Defendants' acts were done intentionally and with improper, abusive, and retaliatory motive.

149.    Defendants also knew that severe emotional distress was substantially certain to result from their actions against Plaintiff.

150.    Defendants' intentional and harassing conduct—including but not limited to sending harassing communications and packages to Plaintiff Winslow, impersonating Plaintiff Winslow, falsely accusing Plaintiff Winslow of sending threats, falsely accusing Plaintiff Winslow of assault and battery, using a police escort to remove Plaintiff Winslow from the department while he was caring for high-acuity patients, revoking Plaintiffs' accommodations, interfering with Plaintiffs' protected leave, bullying Plaintiffs in the workplace, pursuing unjustified disciplinary action against Plaintiffs, and eventually terminating Plaintiffs employment—constituted extraordinary transgressions of the bounds of socially tolerable conduct and/or exceeded any reasonable limit of social toleration.

151.    Defendant's acts caused Plaintiffs to suffer severe emotional and mental harm and distress, and/or also created circumstances under which it was substantially certain that such harm would result.

152.     Defendant OHSU is vicariously liable for the actions of the individual Defendants in intentionally inflicting emotional distress upon Plaintiffs, as the individual Defendants were acting within the course and scope of employment at all relevant times.

153.     As a result of Defendants' violations of Plaintiffs' guaranteed rights, Plaintiffs have suffered emotional and physical distress, damages for impaired reputation and humiliation, and other non-economic damages for which Plaintiffs are entitled to recover compensatory damages from Defendants in an amount to be determined by trial.

154.     As a further result of Defendants' violations of Plaintiffs' protected rights, Plaintiffs have suffered economic damages due to lost employment opportunities, in an amount to be determined by trial.

155.     Plaintiffs were required to hire attorneys to prosecute this action and are entitled to an award of reasonable attorneys' fees, expert fees and costs incurred herein.

156.     Defendants' intentional and willful conduct was egregious and is the type of conduct that punitive damages are designed to deter. Plaintiffs thereby request an award of punitive damages in an amount to be determined by a jury.

### TENTH CLAIM FOR RELIEF

**Both Plaintiffs Against All Defendants**
**(Negligent Infliction of Emotional Distress in Violation of Common Law)**

157.     Plaintiffs incorporate by reference paragraphs 1 through 156 as though set forth herein.

158.     Defendants, by virtue of their supervisory capacity over Plaintiffs, had a special relationship as a result of Plaintiffs' employment with OHSU.

159.    The special relationship required Defendants to act with due care and to ensure that Plaintiffs would not experience emotional distress as a result of Defendants' intentional and/or negligent actions.

160.    Defendants Quitmeyer, Beganovic, Kolarik, and Williams were acting in the course and scope of their employment during many of the alleged acts that inflicted emotional distress on Plaintiffs.

161.    Defendants, including Defendant OHSU, also inflicted severe emotional distress on Plaintiffs by virtue of Defendants' negligence.

162.    Defendants' negligent infliction of emotional distress upon Plaintiffs was accompanied by actual injury to their legally protected interests in their public employment, their legally protected rights to privacy, and their statutory rights as alleged above.

163.    Defendant OHSU is vicariously liable for the actions of the individual Defendants in negligently inflicting emotional distress upon Plaintiffs, as the individual Defendants were acting within the course and scope of employment at all relevant times.

164.    As a result of Defendants' violations of Plaintiffs' guaranteed rights, Plaintiffs have suffered emotional and physical distress, damages for impaired reputation and humiliation, and other non-economic damages for which Plaintiffs are entitled to recover compensatory damages from Defendants in an amount to be determined by trial.

165.    As a further result of Defendants' violations of Plaintiffs' protected rights, Plaintiffs have suffered economic damages due to lost employment opportunities, in an amount to be determined by trial.

166.    Plaintiffs were required to hire attorneys to prosecute this action and are entitled to an award of reasonable attorneys' fees, expert fees and costs incurred herein.

## ELEVENTH CLAIM FOR RELIEF

### Both Plaintiffs Against Defendant OHSU
### (Negligent Retention in Violation of Common Law)

167.     Plaintiffs incorporate by reference paragraphs 1 through 166 as though set forth herein.

168.     Defendant OHSU learned and knew that the individual Defendants had harassed and retaliated against Plaintiffs, yet Defendant OHSU retained the individual Defendants as employees and continued to allow Defendants Beganovic, Kolarik, and Williams to manage employees.

169.     As a proximate cause of this negligent retention, Plaintiffs were harassed and retaliated against and continue to be harassed and retaliated against by Defendants.

170.     As a result of Defendant OHSU's negligence, Plaintiffs have suffered emotional and physical distress, damages for impaired reputation and humiliation, and other non-economic damages for which Plaintiffs are entitled to recover compensatory damages from Defendant OHSU in an amount to be determined by trial.

171.     As a further result of Defendant OHSU's negligence, Plaintiffs have suffered economic damages due to lost employment opportunities, in an amount to be determined by trial.

172.     Plaintiffs were required to hire attorneys to prosecute this action and are entitled to an award of reasonable attorneys' fees, expert fees and costs incurred herein.

## TWELFTH CLAIM FOR RELIEF

### Both Plaintiffs Against Defendant OHSU
### (Negligent Supervision in Violation of Common Law)

173.     Plaintiffs incorporate by reference paragraphs 1 through 172 as though set forth herein.

174. Defendant OHSU knew or should have known that the individual Defendants were capable of and had committed harassment and retaliation on the job. Despite this knowledge, Defendant OHSU failed to appropriately exercise its supervisory role of investigating, discharging, or reassigning the individual Defendants after disclosure of this knowledge. In particular, Defendant OHSU continues to keep Defendants Beganovic and Kolarik in their supervisory roles even after learning of the harassment and retaliation against Plaintiffs.

175. As a proximate cause of this negligent supervision, Plaintiffs were harassed and retaliated against and continue to be harassed and retaliated against by Defendants.

176. As a result of Defendant OHSU's negligence, Plaintiffs have suffered emotional and physical distress, damages for impaired reputation and humiliation, and other non-economic damages for which Plaintiffs are entitled to recover compensatory damages from Defendant OHSU in an amount to be determined by trial.

177. As a further result of Defendant OHSU's negligence, Plaintiffs have suffered economic damages due to lost employment opportunities, in an amount to be determined by trial.

178. Plaintiffs were required to hire attorneys to prosecute this action and are entitled to an award of reasonable attorneys' fees, expert fees and costs incurred herein.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that this Court:

1. Assume jurisdiction of this case and each of the causes of action set forth herein.

2. A declaration that Defendants have violated Plaintiffs' constitutionally protected and statutorily protected rights and an order requiring Defendants to correct this deficiency.

3.      Grant a permanent injunction enjoining Defendant OHSU, its officers, management personnel, employees, agents and all persons in active concert or participation with Defendants, from engaging in any employment practice which retaliates against an employee on the basis of their exercising their right to free speech and whistleblowing on matters of public concern on such terms as the Court may direct.

4.      Grant equitable relief including but limited to an expungement of all negative references to insubordination and code of conduct violations related to the incidents underlying this Complaint that may be in Plaintiffs' personnel files.

5.      Order Defendant OHSU to create, implement and carry out policies, practices and programs providing for equal employment opportunities which affirmatively eradicate the effects of past and present unlawful employment practices, on such terms as the Court may direct.

6.      Order Defendants to make Plaintiffs whole by compensating both Plaintiffs for past and future pecuniary losses, including expenses, impairment of earning capacity, lost past and future earnings and benefits of employment, and such other losses as are awarded by a jury or otherwise established at trial.

7.      Order Defendants to pay Plaintiffs awards of compensatory damages for non-pecuniary losses, including physical and emotional injury, pain and suffering, mental anguish, humiliation, embarrassment and loss of enjoyment of life in an amount to be determined by a jury.

8.      Order the individual Defendants to pay an award of punitive damages in an amount to be determined by a jury.

9.      Award Plaintiffs their costs of suit and reasonable attorney fees, costs and expert witness fees pursuant to 42 U.S.C. § 1988 and ORS 659A.885.

10.     Order Defendants to pay prejudgment interest and post judgment interest, as appropriate, on all amounts due to the Plaintiffs as a result of this action.

11.     Order such further or alternative relief in favor of Plaintiffs as the Court deems appropriate.

## DEMAND FOR JURY TRIAL

Pursuant to Fed. R. Civ. Proc. 38, Plaintiffs demand a trial by jury in this action of all issues so triable.

DATED this __19th__ day of December, 2024.

MCKANNA BISHOP JOFFE, LLP


*/s/ Charese Rohny*

Charese Rohny, OSB No. 953964
Andrew L. Toney-Noland, OSB No. 225718


KAFOURY AND MCDOUGAL


*/s/ Gregory Kafoury*

Gregory Kafoury, OSB No. 741663
Jason Kafoury, OSB No. 091200


Of Attorneys for Plaintiffs