# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF OREGON

|  |  |
|---|---|
| **TROY JAMES WINSLOW** and **HAGOP ("JACK") KHARIKIAN**, | Case No. 3:24-cv-2105-SI |
| Plaintiffs, | **OPINION AND ORDER** |
| v. | |
| **OREGON HEALTH & SCIENCE UNIVERSITY; DAVID QUITMEYER**, in his individual capacity; **ADMIR BEGANOVIC**, in his official and individual capacities; **KRISTA KOLARIK**, in her official and individual capacities; and **QIANA WILLIAMS**, in her official and individual capacities, | |
| Defendants. | |

Charese Rohny and Andrew L. Toney-Noland, MCKANNA BISHOP JOFFE, LLP, 1635 NW Johnson Street, Portland, OR 97209; and Greg Kafoury and Jason Kafoury, KAFOURY AND MCDOUGAL, 411 SW Second Avenue, Suite 200, Portland, OR 97204. Of Attorneys for Plaintiffs.

Karen M. O'Kasey and Gioia Y. Fisk, HART WAGNER LLP, 1000 SW Broadway, Suite 2000, Portland, OR 97201. Of Attorneys for Defendants OHSU, Beganovic, Kolarik, and Williams.

Ryan S. Gibson, RYAN S. GIBSON LAW, LLC, 200 SW Market Street, Suite 900, Portland, OR 97201. Of Attorneys for Defendant David Quitmeyer.

**Michael H. Simon, District Judge.**

Plaintiffs Troy Winslow and Hagop ("Jack") Kharikian, former pediatric respiratory therapists at Oregon Health & Science University ("OHSU"), sue Defendants OHSU; David Quitmeyer, formerly the Director of Respiratory Care Services at OHSU; Admir Beganovic, Interim Assistant Department Director of the Respiratory Care and Special Diagnostics at OHSU; Krista Kolarik, Interim Department Director of the Respiratory Care and Special Diagnostics at OHSU; and Qiana Williams, formerly the Executive Vice President and Chief People Officer at OHSU. The Court collectively refers to all Defendants other than OHSU as the "Individual Defendants." Against the Individual Defendants, Plaintiffs allege claims under 42 U.S.C. § 1983 for violations of their constitutional rights under the First and Fourteenth Amendments. Against only OHSU, Plaintiffs allege whistleblower retaliation, disability discrimination and retaliation, negligent retention, and negligent supervision. Against OHSU, Beganovic, Kolarik, and Williams, Plaintiffs allege family leave discrimination and retaliation in violation of Oregon law and the federal Family and Medical Leave Act ("FMLA"). Finally, against all Defendants, Plaintiffs allege intentional infliction of emotional distress ("IIED") and negligent infliction of emotional distress ("NIED").[1] Now before the Court is Defendant Quitmeyer's motion to dismiss all claims asserted against him.

---

[1] Winslow originally also asserted a claim of "blacklisting" against all Defendants, alleging that they violated Oregon Revised Statutes § 659.805. In his motion to dismiss, Quitmeyer argued among other things that blacklisting does not provide a private right of action, the Court ordered supplemental briefing on that claim, and Plaintiffs sought leave to amend their complaint to withdraw that claim against all Defendants. The Court grants Plaintiffs' request and dismisses Plaintiffs' blacklisting claim against all Defendants. *See* ECF 30 at 5.

**STANDARDS**

A motion to dismiss for failure to state a claim may be granted only when there is no cognizable legal theory to support the claim or when the complaint lacks sufficient factual allegations to state a facially plausible claim for relief. *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010). In evaluating the sufficiency of a complaint's factual allegations, a court must accept as true all well-pleaded material facts alleged in the complaint and construe them in the light most favorable to the non-moving party. *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012); *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010). To be entitled to a presumption of truth, allegations in a complaint "may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). The Court must draw all reasonable inferences from the factual allegations in favor of the plaintiff. *Newcal Indus. v. Ikon Off. Sol.*, 513 F.3d 1038, 1043 n.2 (9th Cir. 2008). The Court need not, however, credit a plaintiff's legal conclusions that are couched as factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).

A complaint must contain sufficient factual allegations to "plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Starr*, 652 F.3d at 1216. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted

unlawfully." *Mashiri v. Epsten Grinnell & Howell*, 845 F.3d 984, 988 (9th Cir. 2017) (quotation marks omitted).

## BACKGROUND[2]

Plaintiffs are former pediatric respiratory therapists at OHSU. ECF 1 ("Compl.") ¶¶ 4-5. Winslow began working at OHSU in February 2020, and Kharikian began working at OHSU in November 2018. *Id.* ¶¶ 14, 54.

On or around November 5, 2022, Winslow allegedly anonymously sent a workplace report to OHSU's Foundation Chairs, describing Winslow's concerns about lax patient safety, pay inequity, and misogyny in the pediatric Respiratory Care Department under Quitmeyer. *Id.* ¶ 16. Plaintiffs assert that in this report, Winslow also described Quitmeyer's production of violent video pornography depicting murder and rape. *Id.* On or about December 21, 2022, Winslow and union staff allegedly posted flyers at OHSU's Doernbecher Children's Hospital highlighting the concerns raised in Winslow's report. *Id.* ¶ 17.

On December 24, 2022, Quitmeyer allegedly emailed the OHSU Respiratory Care Department and described "painting [his] brains on the wall with a shotgun." *Id.* ¶ 18. In this email, Quitmeyer also allegedly stated that he would "be on campus a few days next week." *Id.* Plaintiffs assert that on December 25, 2022, Winslow alerted the OHSU administration and public safety office about Quitmeyer's email, but OHSU took no action. *Id.* ¶ 19. Plaintiffs allege that on December 27, 2022, Quitmeyer sent several messages to colleagues about a "weird email" he just received, which contained threatening language and was from an email address with Winslow's Instagram username spelled backwards. *Id.* ¶ 21. That same day, Winslow

---

[2] Because only Quitmeyer moves to dismiss, this section discusses only the facts relevant to Plaintiffs' allegations against Quitmeyer.

allegedly alerted OHSU campus police about his concerns about Quitmeyer's presence, and campus police asked Quitmeyer to leave the premises. *Id.* On December 30, 2022, Winslow allegedly contacted the OHSU campus police chief to express concerns about identity theft because of the threatening email that Quitmeyer allegedly received. *Id.* ¶ 22. Plaintiffs allege that on or about January 3, 2023, a fax was sent to the OHSU leadership team, attempting to impersonate Winslow, showing an image of Quitmeyer with Xes over his eyes and crosshairs on his forehead, stating "1 asshole down, more 2 go." *Id.* ¶ 23. On January 5, 2023, Winslow learned that OHSU had placed Quitmeyer on paid administrative leave. *Id.* ¶ 24.

On January 6, 2023, Winslow sought a restraining order against Quitmeyer. *Id.* ¶ 25. Winslow alleges that on that same day he received a letter containing a "glitter bomb" by mail to his home address and that the letter was postmarked from Florida. *Id.* Winslow asserts that the letter also included a drawing of a raised middle finger. *Id.*

On or around January 9, 2023, Winslow allegedly sent a formal complaint about Quitmeyer to OHSU's executive leadership team and Board of Directors. *Id.* ¶ 26. Plaintiffs allege that on or about January 19, 2023, Kharikian and 14 colleagues sent a letter to OHSU leadership about the mismanagement of their department and a toxic work environment under Quitmeyer. *Id.* ¶ 27. Winslow allegedly filed a second formal complaint on February 1, 2023, a third complaint on February 10, 2023, and a fourth complaint on February 12, 2023. *Id.* ¶¶ 27, 30, 32. Plaintiffs allege that on February 7, 2023, Kharikian filed an internal OHSU retaliation complaint against Quitmeyer, stating that Quitmeyer used an irregular hiring process to fill a vacancy in the pediatric Respiratory Care Department. *Id.* ¶ 55.

On February 11, 2023, an Amazon package addressed to Winslow's wife allegedly was delivered to Winslow's home. *Id.* ¶ 31. The package allegedly contained a book about how to

learn if your spouse is cheating and a note reading, "Sorry to have to tell you this way . . . Jyllyan." *Id.* Plaintiffs allege that on February 12, 2023, there was a Valentine's Day-themed balloon tied to the front gate of Winslow's home. *Id.* ¶ 32. Plaintiffs assert that throughout February and March of 2023, Winslow's physical and mental health declined because of these events, and that Winslow was diagnosed with post-traumatic stress disorder, major depressive disorder, and unspecified anxiety disorder and took leave under the FMLA. *Id.* ¶ 33. On April 26, 2023, OHSU's Office of Civil Rights Investigation and Compliance allegedly informed Winslow that OHSU would not investigate Winslow's complaints against Quitmeyer unless Quitmeyer returned to in-person work. *Id.* ¶ 34.

In April 2023, Kharikian allegedly learned from Winslow that Kharikian had been named as a likely defendant in a tort claims notice filed by Quitmeyer. *Id.* ¶ 56. Kharikian took medical leave from April through June 2023 based on mental health issues allegedly stemming from Quitmeyer's legal threats, and OHSU's "failure to protect" Kharikian and "inadequate investigation process." *Id.* Plaintiffs allege that on June 12, 2023, OHSU approved Kharikian to take leave in the amount of up to two days biweekly for the foreseeable future. *Id.* ¶ 57. The same day, at the department's morning "huddle," Winslow allegedly was handed an Amazon package with the label "Troy Winslow – Rose Award Enclosed," which contained a plaque reading, "This plaque certifies you as the world's biggest asshole." *Id.* ¶ 36.

On August 24, 2023, Winslow allegedly learned from a colleague that Kolarik had received an Amazon package at work containing a horror film titled, "You're Next." *Id.* ¶ 42. Plaintiffs assert that Winslow believed that this package was sent by someone intending to impersonate him. *Id.* Plaintiffs allege on information and belief that the packages and communications described above were sent by Quitmeyer or an agent acting on his behalf.

*Id.* ¶ 51. Plaintiffs also allege, on information and belief, that Quitmeyer and his wife, who is a manager in respiratory care at Randall Children's Hospital, maintained a "Do Not Hire" list that they circulated to local hospitals, and that this list included Plaintiffs' names. *Id.* ¶ 52.

OHSU terminated Winslow's employment on March 15, 2024. *Id.* ¶ 48. OHSU terminated Kharikian's employment on June 12, 2024. *Id.* ¶ 67. Plaintiffs filed their Complaint in this action on December 19, 2024.

## DISCUSSION

### A.  Failure to State a Claim

Quitmeyer argues that Plaintiffs fail plausibly to allege any conduct by Quitmeyer sufficient to state a claim against him. Quitmeyer contends that Plaintiffs' only allegations that relate to Quitmeyer's conduct are that Quitmeyer sent a department-wide email on December 24, 2022; worked onsite and then was asked to leave by campus police on December 27, 2022; received a "weird" email on December 27, 2022; and filed a tort claim notice in April 2023. These allegations, Quitmeyer argues, fail to state a claim.

Quitmeyer contends that Plaintiffs' remaining allegations are based on "wild speculation" and information and belief and are therefore not plausible under the *Iqbal* pleading standard. Plaintiffs respond that the plausibility standard "does not prevent a plaintiff from pleading facts alleged upon information and belief where the facts are peculiarly within the possession and control of the defendant or where the belief is based on factual information that makes the inference of culpability plausible." *See Soo Park v. Thompson*, 851 F.3d 910, 928 (9th Cir. 2017) (quotation marks omitted). Plaintiffs argue that their allegations are both based on information "peculiarly within the possession and control" of Quitmeyer—whether Quitmeyer sent the anonymous packages and forged the email and fax—and are supported by reasonable inferences from the alleged facts. Specifically, Plaintiffs contend that the timing, content, and context of the

packages and communications imply that Quitmeyer sent them. For example, other OHSU employees who had openly criticized Quitmeyer received similar packages. *See* Compl. ¶ 25 (a critic of Quitmeyer receiving a "glitter bomb" package with the message "Karma is a bitch and so are you"); *id.* ¶¶ 27, 29 (an OHSU employee who signed a letter criticizing Quitmeyer "received a mail package at her desk at work at OHSU" containing "a chocolate dildo with the message 'EAT A DICK' written on the inside of the box").

At this stage of the litigation, Winslow has sufficiently alleged conduct by Quitmeyer. As Plaintiffs argue, the timing, content, and context of the anonymous packages shows that it is plausible that Quitmeyer was the person who sent them. Winslow has also alleged that Quitmeyer emailed colleagues at OHSU. Kharikian, however, has not alleged any conduct by Quitmeyer against him. Kharikian's only allegations about Quitmeyer are that Kharikian filed a complaint against Quitmeyer in February 2023, and that in April 2023, Kharikian learned that he and been named as a likely defendant in a tort claims notice filed by Quitmeyer. *Id.* ¶¶ 55, 56. Kharikian does not allege any details about the tort claims notice, including the torts alleged in that notice. Quitmeyer could have alleged torts entirely unrelated to Plaintiffs' allegations in this lawsuit. Thus, the Court considers only Winslow's claims against Quitmeyer in the remainder of this Opinion and Order.

**B.  § 1983 Claims**

Quitmeyer argues that Winslow's § 1983 claims fail because Quitmeyer did not act under color of state law. Quitmeyer contends that it is undisputed that he was placed on paid administrative leave as of January 5, 2023, and thus he was no longer a state actor after that time. Winslow responds that there is a dispute over the circumstances of Quitmeyer's administrative leave, including whether Quitmeyer had access to his OHSU email and personnel systems or if

he was able to work remotely.[3] Winslow also notes that Quitmeyer sent the email describing "painting [his] brains on the wall with a shotgun," notified his colleagues of the "'weird email' he had just received," and sent harassing packages to Winslow before Quitmeyer was placed on administrative leave.

Section 1983 provides that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State[,] . . . subjects, or causes to be subjected" any person within the jurisdiction of the United States the "deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured." 42 U.S.C. § 1983. To establish § 1983 liability, a plaintiff must prove "(1) deprivation of a right secured by the Constitution and laws of the United States, and (2) that the deprivation was committed by a person acting under color of state law." *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1138 (9th Cir. 2012) (quotation marks omitted).

An individual acts "under color of state law" for purposes of § 1983 when the individual has "exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" *Rawson v. Recovery Innovations, Inc.*, 975 F.3d 742, 748 (9th Cir. 2020) (quoting *West v. Atkins*, 487 U.S. 42, 49 (1988)). Generally, private parties are not acting under color of state law. *Price v. Hawaii*, 939 F.2d 702, 707-08 (9th Cir. 1991). To act under color of law does not require that the defendant be an employee of the state, but he must be "a willful participant in joint action with the State or

---

[3] Relatedly, Winslow contends—without reference to any legal authority—that a state employee who is on paid leave is still a state actor. Quitmeyer responds with out-of-circuit caselaw to argue that paid administrative leave is equivalent to a suspension. This is a fact-intensive inquiry that the Court does not decide on this motion because Quitmeyer did not act under color of state law after being placed on administrative leave for other reasons, discussed below.

its agents." *Dennis v. Sparks*, 449 U.S. 24, 27 (1980). "Private persons, jointly engaged with state officials in the challenged action, are acting . . . 'under color' of law for purposes of § 1983 actions." *Id.* at 27-28.

Quitmeyer argues that the conduct that Winslow attributes to Quitmeyer was personal and not taken under the badge of his authority. *See Naffe v. Frey*, 789 F.3d 1030, 1037-38 (9th Cir. 2015) (holding at motion to dismiss stage that the plaintiff did not sufficiently allege that the defendant was on duty or exercising his responsibilities pursuant to state law, that the defendant's actions were sufficiently related to his work as a county employee, or that the defendant purported or pretended to act under color of state law); *Hyun Ju Park v. City & County of Honolulu*, 952 F.3d 1136, 1141 (9th Cir. 2020) ("Because [the defendants] did not act or purport to act in the performance of their official duties, they were not acting under color of state law.").

The Court agrees that the alleged conduct taken after Quitmeyer was placed on administrative leave, and any anonymous conduct that Winslow attributes to Quitmeyer, such as sending a fax on January 3, 2023, do not sufficiently allege that Quitmeyer was a state actor. Anonymous packages are not "made possible only because the wrongdoer is clothed with the authority of state law." A wrongdoer who does not identify themselves cannot be relying on their authority and does not "abuse[] the position given to him by the State." *Atkins*, 487 U.S. at 50. Even if a defendant is a state employee, that "does not mean [the defendant] abused his government position to violate [the plaintiff's] rights. Indeed, the focus of the inquiry is not on what [the plaintiff] knew about [the defendant] but rather on how [the defendant] used his position . . . to harm [the plaintiff]." *Naffe*, 789 F.3d at 1039 (citation omitted). Similarly, Winslow does not allege that Quitmeyer used his position at OHSU to create or circulate the "Do

Not Hire" list. Winslow does not allege when this list was distributed or if Quitmeyer referenced Quitmeyer's position at OHSU in the list or his circulation of the list. Thus, these allegations are insufficient to plead state action by Quitmeyer.

Winslow's allegations that Quitmeyer sent an email threatening violence on December 24, 2022, and messaged colleagues about a "weird email" he had received on December 27, 2022, however, are sufficient to plead state action. Quitmeyer was able to send this email and the messages only because of his authority and position at OHSU. Thus, the Court analyzes only whether these two allegations are sufficient to state a claim for violation of Winslow's First Amendment and due process rights.

### 1. First Amendment

To plead First Amendment retaliation, a plaintiff must allege that: (1) they engaged in protected speech; (2) the defendant took an "adverse employment action" against them; and (3) the plaintiff's protected speech was a "substantial or motivating" factor for the adverse employment action. *Dodge v. Evergreen Sch. Dist. #114*, 56 F.4th 767, 776 (9th Cir. 2022). Quitmeyer challenges only the second element: the adverse employment action.

To plead an adverse employment action, Winslow must allege that the actions taken by Quitmeyer were "reasonably likely to deter [someone in Winslow's position] from engaging in constitutionally protected speech." *Greisen v. Hanken*, 925 F.3d 1097, 1113 (9th Cir. 2019) (quotation marks omitted). "[T]he key question is whether the retaliatory activity would chill or silence a person of ordinary firmness from continuing to speak out." *Dodge*, 56 F.4th at 779 (quotation marks omitted). The Ninth Circuit has noted that an adverse employment action need not be severe, and even "minor acts of retaliation" can suffice. *Dahlia v. Rodriguez*, 735 F.3d 1060, 1079 (9th Cir. 2013). For example, "informal measures, such as the threat of invoking

legal sanctions and other means of coercion, persuasion, and intimidation," can violate the First Amendment. *Mulligan v. Nichols*, 835 F.3d 983, 989 n.5 (9th Cir. 2016) (cleaned up).

Quitmeyer argues that he was not involved with Winslow at all after he was placed on administrative leave on January 5, 2023, and that because he was on administrative leave, Winslow had no reasonable basis to fear adverse employment consequences because of Quitmeyer. Quitmeyer also contends that the December 24, 2022, email is an isolated instance that does not threaten Winslow and is thus insufficient to chill speech. *See Nunez v. City of Los Angeles*, 147 F.3d 867, 875 (9th Cir. 1998) (holding on summary judgment that evidence that the plaintiff "was bad-mouthed and verbally threatened" was insufficient to establish an adverse employment action, and that "[i]t would be the height of irony, indeed, if mere speech, in response to speech, could constitute a First Amendment violation"). Winslow responds that the December 24, 2022, email constituted an implied threat of violence against Winslow or threat of self-harm by Quitmeyer, made in response to Winslow's protected speech in the form of the flyers he posted. Winslow also argues that Quitmeyer attempted to impersonate Winslow with the December 27, 2022, email, constituting a false accusation.

The December 24th email is not retaliation that would chill the speech of a person of ordinary firmness. This email, which is not directed at any individual, does not threaten harm against anyone else, and a threat of self-harm in response to negative allegations would not reasonably be interpreted as retaliation against the accuser. Rather, the threats of self-harm would likely indicate despair by the sender that such negative allegations were shared about them.

Winslow has sufficiently pleaded that the December 27th email, however, may constitute retaliation. The use of Winslow's Instagram username backwards—assuming that it does not

spell a common word—directs this action at Winslow and paints him in a negative light. A reasonable person in Winslow's position would believe that this email was in retaliation to Winslow's complaints and would be reluctant to speak out again. Thus, Winslow sufficiently has pleaded a § 1983 claim for First Amendment retaliation against Quitmeyer based on the December 27, 2022 email.

### 2. Due Process

Winslow alleges that he suffered a deprivation of his property interests in his public employment without due process. To state a § 1983 claim for lack of procedural due process, a plaintiff must allege "three elements: (1) a liberty or property interest protected by the Constitution; (2) a deprivation of the interest by the government; (3) lack of process." *Portman v. County of Santa Clara*, 995 F.2d 898, 904 (9th Cir. 1993).

Quitmeyer argues that Winslow fails to allege that Quitmeyer was involved in the relevant employment decisions—the firing of Winslow—giving rise to Winslow's due process claim. Winslow responds that a defendant need not be an immediate participant in a due process deprivation to be liable, arguing that "setting in motion a series of acts by others which the actor knows or reasonably should know would cause others to inflict the constitutional injury" is sufficient. *See Merritt v. Mackey*, 827 F.2d 1368, 1371 (9th Cir. 1987) (quotation marks omitted). Winslow also contends that a "stigma-plus" procedural due process claim may proceed against a state actor who publishes a stigmatizing statement that interferes with the plaintiff's liberty or property interest. *See Ulrich v. City & County of San Francisco*, 308 F.3d 968, 982 (9th Cir. 2002) ("Under [the stigma plus] test, a plaintiff must show the public disclosure of a stigmatizing statement by the government, the accuracy of which is contested, *plus* the denial of some more tangible interest such as employment, or the alteration of a right or status recognized by state law." (emphasis in original) (cleaned up)). Winslow argues that Quitmeyer drew

attention to Winslow as a potential safety threat by impersonating him, leading others to deprive

him of his employment rights and constituting a stigmatizing statement.

As to Winslow's claim that Quitmeyer "set in motion" the acts that led to his firing, the

action here is much more attenuated than in *Merritt*. In *Merritt*, state and federal officials issued

a final report in February 1983, which conditioned the employer's funding on terminating the

plaintiff's employment. 827 F.2d at 1370. The employer fired the plaintiff on March 17, 1983.

*Id.* In this case, Winslow was fired more than a year after Quitmeyer was placed on

administrative leave and has not alleged that Quitmeyer encouraged OHSU to fire him. In fact,

Winslow alleges many actions involving other Defendants related to Winslow's firing, occurring

after Quitmeyer was placed on leave.[4] These intervening events indicate that Quitmeyer's two

emails from December 2022 did not put in motion the events that led to Winslow being fired.

Moreover, Winslow has not sufficiently alleged that Quitmeyer's emails would cause the other

Defendants to take action against Winslow. The December 24th email did not reference Winslow

at all, and the December 27th email—which was sent to only a few colleagues, the identities of

which Winslow does not specify—only obliquely referenced Winslow by including his

---

[4] *See, e.g.*, Compl. ¶ 35 ("Throughout April and May 2023, Defendant Beganovic repeatedly utilized noncredible complaints against Plaintiff Winslow to discipline him without any thorough investigation."); *id.* ¶ 39 (Winslow was placed on administrative leave after unintentionally missing a meeting with Beganovic); *id.* ¶ 44 (allowing Winslow to return to work with a "final written warning added to his file," which included a condition that Winslow's mental health accommodation would be revoked, such that Winslow "was forced to enter several months of negotiations with OHSU's accommodation office and publicly explain his trauma to his colleagues over email in order to retain his accommodation"); *id.* ¶ 45 ("[I]n early February 2024, Defendant Kolarik assigned Plaintiff Winslow to an adult nightshift position, a position with an extremely difficult schedule for a worker with two young children at home. Plaintiff Winslow requested an alternative schedule and took protected leave to care for his mental health and stress due to the retaliation he was facing."); *id.* ¶¶ 46-47 (Winslow first being placed on paid leave in February 2024 and then unpaid leave in March 2024).

Instagram username backwards. These allegations are insufficient to plead that Quitmeyer caused Winslow's injuries.

As to the "stigma plus" claims, Quitmeyer argues that his statements were only to OHSU personnel and thus do not constitute a "public disclosure." *See Wenger v. Monroe*, 282 F.3d 1068, 1074 n.5 (9th Cir. 2002) (holding that disclosures made within the military, where the plaintiff worked, were not public disclosures), *as amended on denial of reh'g and reh'g en banc* (Apr. 17, 2002). The December 24th and 27th emails were only sent to OHSU employees. Thus, Winslow fails to assert a claim for violation of his due process rights against Quitmeyer.

## C. IIED

Under Oregon law, a plaintiff asserting a claim for IIED must prove: "(1) the defendant intended to inflict severe emotional distress on the plaintiff, (2) the defendant's acts were the cause of the plaintiff's severe emotional distress, and (3) the defendant's acts constituted an extraordinary transgression of the bounds of socially tolerable conduct." *McGanty v. Staudenraus*, 321 Or. 532, 543 (1995) (en banc) (quotation marks omitted). To survive a motion to dismiss, it is sufficient that a plaintiff alleges either that the defendant "desired to inflict severe emotional distress [or] that the defendant knew that such distress was substantially certain to result from a volitional act." *Babick v. Or. Arena Corp.*, 333 Or. 401, 412 (2002). For the defendant's acts to constitute an extraordinary transgression, the conduct alleged must be "outrageous in the extreme." *Watte v. Edgar Maeyens, Jr., M.D., P.C.*, 112 Or. App. 234, 239 (1992).

Quitmeyer argues that Winslow does not allege that Quitmeyer engaged in conduct that could be considered "an extraordinary transgression of the bounds of socially tolerable conduct." Quitmeyer again contends that Winslow's allegations pleaded on information and belief are insufficient to support a plausible claim. Winslow responds that he has alleged conduct by

Quitmeyer, including falsely accusing someone of potentially criminal conduct in the form of threatening supervisors and sending harassing packages, that has been found sufficient for an IIED claim under Oregon law. *See, e.g.*, *Woods v. First Am. Title Ins. Co. of Or., Inc.*, 102 Or. App. 343, 348 ("Falsely accusing someone of being a liar, a thief and a fraud before a third person, knowing that the accusations are not true, and persuading a police officer to harass the accused person on the basis of those assertions, constitute more than every-day rude behavior."), *adh'd to on reconsideration*, 104 Or. App. 100 (1990).

Under this standard, the anonymous conduct that Winslow attributes to Quitmeyer of repeatedly sending harassing packages could be considered outrageous and an extraordinary transgression. Thus, at this stage of the litigation, Winslow sufficiently alleges a claim for IIED against Quitmeyer.

**D.  NIED**

Under Oregon's physical impact rule, "a plaintiff who has suffered emotional distress as a result of a defendant's negligence ordinarily may not recover damages for such emotional harm in the absence of some sort of physical impact." *I.K. v. Banana Republic, LLC*, 317 Or. App. 249, 254 (2022) (citing *Norwest v. Presbyterian Intercommunity Hosp.*, 293 Or. 543, 558-61 (1982)). Oregon courts have not "define[d] the minimum amount of bodily harm necessary to constitute a physical impact," but "[a]t a minimum, the physical impact rule requires an act or omission that results in some perceptible physical effect on a plaintiff." *Chouinard v. Health Ventures*, 179 Or. App. 507, 514-15 (2002). If the plaintiff suffers no physical impact, a claim for NIED can proceed when (1) the defendant violated a "legally protected interest" independent of the negligent conduct, *I.K.*, 317 Or. App. at 254; (2) the defendant is subject to a "standard of care that includes a specific duty to be aware of and guard against particular adverse psychological reactions," typically in the medical profession, *Curtis v. MRI Imaging Servs. II*,

327 Or. 9, 14-15 (1998); or (3) the plaintiff is a bystander who contemporaneously witnessed the

negligent death of or injury to a family member, *Philibert v. Kluser*, 360 Or. 698, 712-16 (2016)

(applying the Restatement (Third) of Torts standard).

Winslow does not argue that he has suffered a physical impact, and the Court agrees that

Winslow's allegedly psychological and emotional distress do not constitute a physical impact.

Instead, Winslow contends that he has sufficiently alleged that Quitmeyer violated Winslow's

legally protected interests in not being blacklisted, reporting malfeasance without fear of

retaliation, and not being falsely impersonated. As Quitmeyer argues, however, these actions all

involve *intentional* actions by Quitmeyer. A claim for NIED requires that the plaintiff suffered

because of the defendant's *negligence*. Thus, Winslow fails to assert a claim for NIED.

## E.  Leave to Amend

Rule 15(a)(2) of the Federal Rules of Civil Procedure provides that the "court should

freely give leave [to amend a pleading] when justice so requires." A district court should apply

Rule 15's "policy of favoring amendments . . . with extreme liberality." *Price v. Kramer*, 200

F.3d 1237, 1250 (9th Cir. 2000) (quotation marks omitted). The purpose of the rule "is 'to

facilitate decision on the merits, rather than on the pleadings or technicalities.'" *Novak v. United

States*, 795 F.3d 1012, 1020 (9th Cir. 2015) (quoting *Chudacoff v. Univ. Med. Ctr.*, 649

F.3d 1143, 1152 (9th Cir. 2011)). A district court, however, may, within its discretion, deny a

motion to amend "due to 'undue delay, bad faith or dilatory motive on the part of the movant,

repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the

opposing party by virtue of allowance of the amendment, [and] futility of the amendment.'"

*Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1007 (9th Cir. 2009) (alteration in

original) (quoting *Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008)).

"Not all of the factors merit equal weight. As this circuit and others have held, it is the

consideration of prejudice to the opposing party that carries the greatest weight." *Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003). Futility of amendment, however, "can, by itself, justify the denial of a motion for leave to amend." *Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995). Generally, however, "[a]bsent prejudice, or a strong showing of any of the remaining [four] factors, there exists a *presumption* under Rule 15(a) in favor of granting leave to amend." *Eminence Cap.*, 316 F.3d at 1052 (emphasis in original). When weighing the factors, all inferences should be made in favor of granting the motion to amend. *Griggs v. Pace Am. Grp., Inc.*, 170 F.3d 877, 880 (9th Cir. 1999).

Leave to amend may be denied if the proposed amendment is futile or would be subject to immediate dismissal. *Carrico v. City & County of San Francisco*, 656 F.3d 1002, 1008 (9th Cir. 2011). An amendment is futile "only if no set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim or defense.'" *Barahona v. Union Pac. R.R. Co.*, 881 F.3d 1122, 1134 (9th Cir. 2018) (quoting *Sweaney v. Ada County*, 119 F.3d 1385, 1393 (9th Cir. 1997)); *see also Missouri ex rel. Koster v. Harris*, 847 F.3d 646, 656 (9th Cir. 2017) ("An amendment is futile when 'no set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim or defense.'" (quoting *Miller v. Rykoff-Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988))). If the underlying facts or circumstances possibly could "be a proper subject of relief, [a plaintiff] ought to be afforded an opportunity to test his claim on the merits." *Foman v. Davis*, 371 U.S. 178, 182 (1962).

Quitmeyer argues that amendment would be futile because Quitmeyer left OHSU by January 5, 2023, and had no contact with Plaintiffs or involvement in their employment. Plaintiffs respond that when Quitmeyer left OHSU and whether he had contact with Plaintiffs after January 5, 2023, are disputed facts. Plaintiffs argue that they can allege more facts and

evidence, including statements by Quitmeyer himself, Plaintiffs' source of information about the "Do Not Hire" list, Plaintiffs' efforts to obtain employment after leaving OHSU, and Winslow's efforts to determine who sent the anonymous packages and communications.

The Court finds that amendment would not be futile. Plaintiffs have not yet had an opportunity to amend their complaint. Plaintiffs also assert that they can allege more facts to support their claims. Thus, the Court grants Plaintiffs leave to amend if they in good faith believe that they can cure the deficiencies identified in this Opinion and Order.

## CONCLUSION

The Court GRANTS IN PART AND DENIES IN PART Quitmeyer's Motion to Dismiss for Failure to State a Claim, ECF 17. Against Quitmeyer, the Court dismisses: (1) all claims asserted by Kharikian; (2) Winslow's claim for First Amendment retaliation premised on any allegation other than the email sent on December 27, 2022; (3) Winslow's claim for due process violations; and (4) Winslow's claim for NIED. Plaintiffs have leave to amend these claims within two weeks from the date of this Order. The Court dismisses Winslow's claim for blacklisting against all Defendants without leave to amend.

**IT IS SO ORDERED.**

DATED this 19th day of May, 2025.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge